IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY KINSLER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-6412 |
| CITY OF PHILADELPHIA, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                            **JUNE 29, 2015**

Presently before the Court is the Plaintiff's Motion for Post-Trial Relief under Federal Rules of Civil Procedure 59(a)(1), 59(e), and 60(b)(6). (ECF No. 56.) For the following reasons, Plaintiff's Motion will be denied.

**I.     BACKGROUND**

This is a civil action brought pursuant to 42 U.S.C. § 1983 *et seq.*, in which Plaintiff, Jeffrey Kinsler, alleges violations of his Fourth and Fourteenth Amendment rights. A jury trial was held on October 20-22, 2014. During trial, judgment was entered as a matter of law in favor of Defendants on Plaintiff's malicious prosecution claim. The jury returned a verdict in favor of Defendants on the remaining excessive force claim.

    **A.     Factual Background**

On November 10, 2011, Jeffrey Kinsler drank to the point of becoming drunk and belligerent. (Oct. 22, 2014 P.M. Sess. Trial Tr. 40-41, 48-50.) After leaving work for the day as a construction laborer, he proceeded to the Stadium Bar at Linden and State Roads in Philadelphia. (*Id*. at 40.) Over the next two to three hours, Plaintiff estimates that he consumed 11 pints of Budweiser. (*Id*. at 41, 48-49.) He then proceeded to accept a ride home from an individual that he had just met and had been drinking with. (*Id*. at 42, 49.) Almost as soon as

they left the bar's parking lot, Plaintiff and his acquaintance were involved in a minor automobile accident. (*Id*. at 43, 49.) Plaintiff testified that this accident is the last recollection he has of that evening. (*Id*. at 43, 50.) Due to the quantity of alcohol that Plaintiff consumed, he does not recall any of the events that occurred thereafter—specifically the incident that was the subject of the criminal charges and the subject of this litigation. (*Id*.) Eyewitness testimony and a videotape of the incident paint a picture of the events that followed.

Shortly following the automobile accident, eyewitness Taylor Rice arrived on scene. (Oct. 21, 2014 Trial Tr. 32-33.) She observed Plaintiff and his acquaintance, who had gotten out of their vehicle, approach a bystander's vehicle, go through the window, and proceed to punch the bystander. (*Id*. at 33.) By this time a small crowd had gathered. (*Id*. at 34.) The bystander exited his vehicle and attempted to restrain Plaintiff. (*Id*.) Plaintiff, who was combative, loud, and profane, responded by spitting his blood on the bystander. (*Id*.) When police arrived on scene, they broke up the fracas and moved Plaintiff to the side. (*Id*. at 35.) Ms. Rice then observed Plaintiff being combative with the police officers, spitting on one of them. (*Id*.) The police attempted to place Plaintiff in handcuffs. (*Id*.) Plaintiff continued to resist. (*Id*.) Only after Plaintiff's continued resistance did Ms. Rice observe the police officers use force on Plaintiff, specifically the attempted use of a Taser and the striking with a "nightstick." (*Id*. at 35-36.)

Thomas Luecke also testified at trial. (*Id*. at 39.) Mr. Luecke was the nephew of the bystander Plaintiff was fighting with, and the then boyfriend of Taylor Rice who alerted him to the incident. (*Id*. at 40.) When he arrived on scene, he observed Plaintiff on the ground, bleeding, and acting belligerent. (*Id*. at 41-42.) Not long thereafter police arrived on scene. (*Id*. at 42.) Mr. Luecke observed police spend five to ten minutes attempting to get Plaintiff to

cooperate and submit to an arrest. (*Id*.) After continuing to resist arrest and refusing to cooperate with the police officers, Mr. Luecke observed police attempt to deploy a Taser on Plaintiff. (*Id*. at 43-44.) The Taser did not appear to work. Mr. Luecke testified that the prongs of the Taser did not appear to connect to Plaintiff's body. (*Id*. at 44.) He then observed a police officer strike Plaintiff with a silver baton, which did cause Plaintiff to finally submit to the arrest. (*Id*.)

Ashley Andrews is another individual who appeared on scene. (*Id*. at 20.) The crowd that had gathered caused her to stop to see what was going on. (*Id*. at 23-24.) At trial she acknowledged being present, but did not recall a great deal as to the events that she observed. (*Id*. at 20, 23.) However, Ms. Andrews did acknowledge that she provided a report to police that evening as to what she saw. (*Id*. at 25-26.) She told police that she observed Plaintiff punch a police officer. (*Id*.)

Gerald Crimi was a passerby who stopped at the scene because of other cars that had stopped in the immediate area. (Oct. 20, 2014 P.M. Sess. Trial Tr. 26-28.) Upon exiting his vehicle, he recorded on videotape certain of the events that transpired following this automobile accident.[1] (*Id*. at 27-28.) The videotape shows approximately three minutes out of the 20-25 minutes that Mr. Crimi spent on scene. (*Id*. at 29.) When he first arrived, he was told an attempted car-jacking had occurred and observed Plaintiff lying on the ground bleeding from his nose and mouth. (*Id*. at 28-29.) Plaintiff was observed to be drunk and angry. (*Id*. at 30.) Mr. Crimi watched Plaintiff spit blood on another individual. (*Id*.) Police officers arrived on the scene and attempted to restrain Plaintiff. (*Id*. at 33.) Plaintiff did not comply with the officers'

---

[1] A copy of the videotaped footage was admitted into evidence at trial. (Pl. Tr. Ex. P-3.) The same video footage is publically available on YouTube. (*See* Compl. ¶ 14.)

3

orders; he was seen cursing at the officers, squirming, and moving around. (*Id*. at 37-38.) After a period of resisting arrest, Mr. Crimi watched the officers deploy a Taser on Plaintiff (which did not appear to be effective), and then strike him with a baton. (*Id*. at 32-33.) Plaintiff thereafter submitted to an arrest. (*Id*.) From Mr. Crimi's perspective, the use of force by the police officers was only to get Plaintiff to comply and stop resisting arrest. He did not view it to be penal. (*Id*. at 37-38.)

The video footage recorded by Mr. Crimi largely corroborates the testimony of the eyewitnesses. Plaintiff, wearing a white shirt, is observed bloodied, slurring his speech, stumbling around, and shouting profanity. This included continuing use of the "f-word." He is later observed attempting to engage in an altercation with a bystander. In addition, he attempts to wipe his blood on the bystander and later spits his blood on that individual. After police arrive, Plaintiff is seen sitting on the ground. Although voices cannot be heard, Plaintiff appears to be rebuffing commands of the police officers. A police officer is then seen deploying a Taser on Plaintiff, which does not have any noticeable effect on him. A second police officer is then observed striking Plaintiff with an extendable metal baton (referred to at trial as an "asp") once on each elbow. Plaintiff then falls to the side and submits to the arrest.

In response to the situation involving Plaintiff and his acquaintance, Police Officers Byron Ward and Alva Thurston (named Defendants here) were called to the scene. (*Id*. at 81.) They responded to a radio call for a fight on the highway and an automobile accident. (*Id*.) On arrival, the officers viewed one group of bystanders holding Plaintiff and another group holding his acquaintance. (*Id*. at 81, 94-95.) Plaintiff is observed as bloodied, shouting profanity, and acting aggressively. (*Id*. at 82, 95.) After inquiring from the crowd as to what was going on, Officer Ward led Plaintiff to sit on the rear of a police vehicle while Officer Thurston led

4

Plaintiff's acquaintance to another area. (*Id*. at 84-85; Oct. 21, 2014 Trial Tr. 11.) After Officer Ward turned his attention to his partner, Plaintiff walked away from the police vehicle and sat down in the street. (Oct. 20, 2014 P.M. Sess. Trial Tr. 85-86.)

After sitting in the street, Plaintiff continued shouting profanities at Officers Ward and Thurston and also began spitting blood at members of the crowd. (*Id*. at 102.) Officer Ward cautioned Plaintiff to stop or he would be arrested; Plaintiff then spat blood on Officer Ward and punched him in the groin area. (*Id*. at 58-59, 86; Oct. 21 Trial Tr. 11-12.) Plaintiff was then advised that he was under arrest and instructed to get up off the ground. (Oct. 20, 2014 P.M. Sess. Trial Tr. 86.) He refused to do so, and continued to refuse any command of the officers. (*Id*.; Oct. 21 Trial Tr. 11-12.) At this point, Plaintiff was warned that if he did not cooperate, Officer Thurston would deploy a Taser on him. (Oct. 20 P.M. Sess. Trial Tr. 86; Oct. 21 Trial Tr. 11-12.) Plaintiff continued to resist, and Officer Thurston deployed his Taser on Plaintiff. (Oct. 20 P.M. Sess. Trial Tr. 86; Oct. 21 Trial Tr. 11.) Based upon Officer Thurston's and Officer Ward's observations and experiences with a Taser, the Taser did not have any effect on Plaintiff as one of the two prongs did not appear to attach to Plaintiff's skin. (Oct. 20 P.M. Sess. Trial Tr. 86-87, 93-94; Oct. 21 Trial Tr. 14.) Officer Thurston then struck Plaintiff, once on the back of each elbow, with his asp. (Oct. 20 P.M. Sess. Trial Tr. 87-88.) After being struck with the asp, Plaintiff fell to the side and finally submitted to an arrest. (*Id*. at 88.)

Based upon the actions of Plaintiff, Officers Ward and Thurston completed official reports and submitted them to the Office of the District Attorney to be evaluated for possible criminal charges. (Oct. 21 Trial Tr. 15-16.) Criminal charges were eventually brought against Plaintiff by the District Attorney, which included assault charges, resisting arrest, reckless endangerment, and disorderly conduct. At a trial in the Court of Common Pleas of Philadelphia

County, a judge sitting non-jury, for some reason, found Plaintiff not guilty of all charges.

### B. Procedural Background

Plaintiff began this litigation by filing a Complaint on November 1, 2013. (Compl., ECF No. 1.) He initially asserted claims of excessive force, malicious prosecution, and a municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Compl. Counts I-III.) Plaintiff later stipulated to the dismissal of Defendants, Police Commissioner Charles Ramsey and the City of Philadelphia, thereby abandoning his *Monell* claim. (Praecipe for Voluntary Dismissal, ECF No. 10.) This matter proceeded to trial on the claims of excessive force and malicious prosecution against Officers Ward and Thurston.

A jury trial was held from October 20 through 22, 2014. During trial, Defendants moved for partial judgment as a matter of law under Federal Rule of Civil Procedure 50 as to Plaintiff's malicious prosecution claim. Defendants' Motion was granted by Order dated October 21, 2014. (ECF No. 50.) The jury returned a unanimous verdict in favor of Defendants on October 22, 2014, on Plaintiff's claim of excessive force. (Verdict Form, ECF No. 52.) Judgment was entered on the verdict. (Judgment, ECF No. 54.) Plaintiff timely filed the instant Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. Rule 59(a) does not specify the bases on which a court may grant a new trial, but rather leaves the decision to the discretion of the district court. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). Courts have granted new trials when there have been prejudicial errors of

6

law or when the verdict is against the weight of the evidence. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa. 1992) (citations omitted).

The scope of the district court's discretion when adjudicating a Rule 59 motion depends on whether the motion is based on a prejudicial error of law or on a verdict alleged to be against the weight of the evidence. *See Klein v. Hollings,* 992 F.2d 1285, 1289-90 (3d Cir. 1993). When the basis of the motion involves a matter within the trial court's sound discretion, such as the court's evidentiary rulings or points for charge to the jury, the trial court has wide latitude in deciding the motion. *Link v. Mercedes-Benz of N. Am., Inc.,* 788 F.2d 918, 921-22 (3d Cir. 1986); *see also Klein,* 992 F.2d at 1289-90. The court must determine: (1) whether an error was in fact made; and (2) whether the error was so prejudicial that a refusal to grant a new trial would be inconsistent with substantial justice. *Bhaya v. Westinghouse Elec. Corp.,* 709 F. Supp. 600, 601 (E.D. Pa. 1989).

When the verdict is alleged to be against the weight of the evidence, however, the district court's discretion to order a new trial is narrower, *Klein,* 992 F.2d at 1290, and the "district court [is cautioned] not [to] substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus. Inc.,* 278 F.2d 79, 90 (3d Cir. 1960)). As a determination that a jury's verdict was against the weight of the evidence "effects a denigration of the jury system," a court may grant such motion "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1353 (3d Cir. 1991) (citing *EEOC v. Del. Dep't of Health,* 865 F.2d 1408, 1413 (3d Cir. 1989)).

## III. DISCUSSION

Plaintiff raises three issues in his Motion. First, he argues that it was an error of law to dismiss his malicious prosecution claim during trial. Second, Plaintiff argues that admission of his post-arrest conduct was improper under Federal Rules of Evidence 401 and 403. Third, Plaintiff argues that the verdict was against the weight of the evidence.

### A. Dismissal of Plaintiff's Malicious Prosecution Claim

Plaintiff argues that it was error to grant Defendants' Motion under Federal Rule of Civil Procedure 50 during trial, and to enter judgment as a matter of law as to his malicious prosecution claim. He contends that this was an issue that should have gone to the jury.

Initially, we note the lack of any significant legal argument on this issue in Plaintiff's Brief. Plaintiff cites to the trial transcript to supposedly establish that his underlying disorderly conduct charge was "dismissed for want of probable cause." (Pl.'s Br. 2 (citing Oct. 21, 2014 Trial Tr. 31).) However, the record does not at all establish that the disorderly conduct charge was dismissed for lack of probable cause. Moreover, at trial, Plaintiff did not contest the fact that there was probable cause to bring the disorderly conduct charge. (*See* Oct. 21, 2014 Trial Tr. 29; Pl.'s Resp. in Opp. to Defs.' Rule 50 Mot. 1, ECF No. 48.) Plaintiff also cites to *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (citing *Brooks v. City of Winston-Salem N.C.*, 85 F.3d 178, 184 n.5 (4th Cir. 1996)), and *Lippay v. Christos*, 996 F.2d 1490 (3d Cir. 1993) for the proposition that "the mere absence of probable cause (i.e., inference) gives rise to a jury issue." (Pl.'s Br. 3.) These cases do not provide support for that proposition. Plaintiff does not advance any additional argument in support of this issue. He also fails to address the analysis contained within our Order granting Defendants' Rule 50 Motion (ECF No. 50).

Plaintiff was charged with numerous criminal offenses as a result of his actions on

November 10, 2011. One of those charges was disorderly conduct. Defendants based their Rule 50 Motion on the argument that the existence of probable cause as to the disorderly conduct charge operated to extinguish the malicious prosecution claim in total. Plaintiff responded that an analysis of probable cause as to each criminal charge was necessary, and that he could succeed on his malicious prosecution claim upon a finding of a lack of probable cause as to any one charge, notwithstanding the existence of probable cause on the disorderly conduct charge. The parties did not dispute the existence of probable cause as to the disorderly conduct charge. They could not credibly have done so in light of the testimony and Plaintiff's actions on the video. Therefore, this dispute centered on whether the Third Circuit's analysis in *Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir. 2005), or its decision in *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007), controlled.

Both *Wright* and *Johnson* are cases presenting malicious prosecution claims. In *Wright*, police officers arrested the plaintiff and prepared affidavits that led to the District Attorney charging the plaintiff with numerous crimes. 409 F.3d at 598. The court analyzed whether the police officers had probable cause to arrest the plaintiff in the first instance, and concluded that there was probable cause as to at least one of the charges. *Id*. at 602-04. The court then held that the existence of probable cause as to one charge served to bar the plaintiff's malicious prosecution claim in total. *Id*. at 604. In *Johnson*, however, the court reached a different conclusion. Based upon the evidence presented there, the court required that a probable cause analysis to be made for each of the charges brought. 477 F.3d at 85. However, this holding appears to have been based upon the unique factual circumstances presented. Specifically, the *Johnson* court noted the active involvement of the police officers in the criminal charges that were brought after the plaintiff was arrested, which included their making of false

9

representations. In *Wright* the police officer merely prepared an affidavit. There were no subsequent false representations to the charging authority. *Id*. at 84.

*Johnson* did not overrule *Wright*. Moreover, subsequent to *Johnson*, the Third Circuit sitting *en banc* noted that "if one of those two cases must control for purposes of analyzing the probable cause element, it would be *Wright*, not *Johnson*, that controls." *Kossler v. Crisanti*, 564 F.3d 181, 194 n.8 (3d Cir. 2009) (*en banc*). Multiple courts have since followed the Third Circuit's guidance, and applied *Wright* to dismiss a malicious prosecution claim. *See Pellegrino v. U.S. Trans. Sec. Admin.*, No. 09-5505, 2014 WL 3952936, at *7 (E.D. Pa. Aug. 12, 2014) (applying *Wright* to dismiss malicious prosecution claim); *Giordano v. Murano-Nix*, No. 12-7034, 2014 WL 62459, at *7 n.11 (E.D. Pa. Jan. 8, 2014) (same); *Romich v. Sears Holding Corp.*, No. 12-5383, 2013 WL 5925082, at *5 n.2 (E.D. Pa. Nov. 5, 2013) (same).

The circumstances that led to the presentment of criminal charges against Plaintiff here are analogous to the circumstances present in *Wright*. Here, Officers Ward and Thurston merely prepared reports concerning the evening of November 10, 2011. They then submitted their reports to the Office of the District Attorney who independently analyzed the evidence and their statements, and independently made the decision to criminally charge Plaintiff. Unlike in *Johnson*, the Defendant Officers' participation in the criminal charges brought ceased after they submitted their reports to the District Attorney. Accordingly, based upon the facts and circumstances present, it was proper to apply the standard in *Wright*.

Since *Wright* applies here, the existence of probable cause for at least one of the criminal charges against Plaintiff operates to extinguish his claim of malicious prosecution. *Wright*, 409 F.3d at 604. As noted, there was no dispute as to the existence of probable cause with regard to the disorderly conduct charge. Since probable cause existed, Plaintiff could not proceed on the

malicious prosecution claim. Granting Defendants' Rule 50 Motion was proper.

## B. Admission of Plaintiff's Post-Arrest Conduct

Plaintiff's next issue concerns the brief testimony offered by Officer Thurston regarding Plaintiff's actions at the hospital after his arrest. Plaintiff contends this testimony was inadmissible under Federal Rules of Evidence 401 and 403.

At trial, the following exchange occurred between Defense Counsel and Officer Ward:

Q. Okay. After Mr. Kinsler was placed in handcuffs, were this – was there any force used by any police officer?

A. No force was used as he was placing [sic] handcuffs.

When he was taken to the hospital, though, when we took the handcuffs off, he was very violent to the hospital staff. They –

MR. BAIRD: Objection, Your Honor; relevance.

THE COURT: Excuse me?

MR. BAIRD: Relevance, Your Honor.

THE COURT: The Objection's overruled.

THE WITNESS: He was very violent to the hospital staff. They had to strap him down. He was cussing them out, calling them F-bombs. They had to give him Ativan – a lot of Ativan, because he was apparently under the influence of something, and they had to put him in straps.

(Oct. 21, 2014 Trial Tr. 14-15.) Plaintiff challenges this testimony.

At trial, the jury was tasked with deciding whether the officers were justified in the use of force, the reasonableness of the force used, and the damages, if any, caused by their use of force. *See*, *e.g.*, Third Circuit Model Jury Instruction §§ 4.8.1, 4.9 (2014). The video shown during trial depicted, and the witness testimony confirmed, that Plaintiff was drunk and combative in his dealings with the Defendant Officers. That Plaintiff continued acting out in such a manner after

his arrest bears upon the justification for and reasonableness of the force used. The testimony also goes to the mental state of Plaintiff that evening and how a reasonable police officer would handle such an individual in such a drunken state. *See Healy v. Haverford Twp.*, 462 F. App'x 224, 227-28 (3d Cir. 2012) (concluding that video depicting post-arrest conduct relevant to claim of unnecessary force and bared directly upon the extent of the force used and the plaintiff's credibility). Moreover, Officer Thurston's testimony was relevant to the issue of damages. In deciding damages, the jury was called upon to determine what damages, if any, resulted from the officers' use of force. Consideration of injuries potentially sustained elsewhere was relevant to that inquiry. *See Mellott v. Heemer*, 161 F.3d 117, 123 (3d Cir. 1998) (noting that whether use of force resulted in injury relevant to question of reasonableness); *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (deciding the question of "reasonableness" requires an analysis of the "totality of the circumstances").

Officer Thruston's testimony was also not prejudicial to Plaintiff. The video depicting Plaintiff in a drunken, combative state was shown repeatedly at trial—many times at Plaintiff's insistence. The testimony of multiple eyewitnesses and the Defendant Officers confirmed what is viewed on the video. Testimony that Plaintiff did not cease his outrageous conduct upon his arrest did not prejudice the jury. Based upon the totality of the evidence presented, this is a logical inference any reasonable juror would draw. Further, Plaintiff himself testified that he awoke in the hospital in severe pain, being hit with paddles, and handcuffed to the bed. (Oct. 20 P.M. Sess. Trial Tr. 43-44.) Officer Thurston's clarification as to how Plaintiff arrived in such a state was not unduly prejudicial to Plaintiff.

Since the testimony offered by Officer Thurston was relevant to the issues before the

jury, and was not unduly prejudicial to Plaintiff, the testimony was admissible under Rules 401 and 403. Plaintiff's objection was properly overruled.

### C. The Weight of the Evidence Supporting the Verdict

Finally, Plaintiff argues that the verdict was against the weight of the evidence. He specifically argues that the video shown during trial is, in and of itself, *prima facie* evidence of excessive force. Based upon the totality of the evidence presented at trial, this argument fails.

During trial, numerous eyewitnesses testified as to the belligerent and combative state of Plaintiff. They also testified that Plaintiff was seen spitting blood on Officer Ward and others, punching Officer Ward, and completely resisting the Officers' commands. These eyewitnesses confirmed that, from their perspective, force was only used by the Officers in an attempt to have Plaintiff submit to an arrest and was not excessive in nature. Furthermore, Officers Ward and Thurston testified as to Plaintiff's state, his assault on Officer Ward, and his refusal to submit to an arrest. The officers provided the jury with the reasons why they used force, the nature of the force used, and its effect on Plaintiff. The jury was then able to weigh all of this testimony against the scenes depicted in the video, which they saw multiple times during trial.

The duty to weigh the evidence and determine the credibility of witnesses rests squarely with the jury. *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000). Furthermore, we may not substitute our judgment of the facts and credibility of the witnesses for that of the jury. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (citation omitted). Here, the evidence that provided context to the scenes depicted on the video was presented through the testimony of the eyewitnesses and the Defendant Officers. All of this testimony supported the officers' version of the events. Plaintiff offered nothing, other than argument, to rebut this evidence. The jury was free to accept or reject the testimony presented at

trial. The jury was also free to accept or reject Plaintiff's characterization of this evidence. The jury's acceptance of the testimony of the eyewitnesses and the Defendant Officers, and rejection of Plaintiff's characterization of that evidence and testimony, does not suggest that the verdict was improper.

Contrary to Plaintiff's argument, "[n]ot every push or shove . . . violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Fourth Amendment does not prohibit the use of any force; it prohibits only the unreasonable use of excessive force. Based upon the totality of the evidence and testimony presented, the Defendant Officers acted reasonably and did not engage in an excessive use of force. The jury's verdict in this case clearly was not against the weight of the evidence. In fact, when one views the evidence and testimony in this case, and specifically when one views the video, one wonders why this lawsuit was ever filed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Post-Trial Relief under Federal Rules of Civil Procedure 59(a)(1), 59(e), and 60(b)(6) will be denied.

An appropriate Order follows.

                                                **BY THE COURT:**

                                                _____
                                                **R. BARCLAY SURRICK, J.**